**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| Barbara Hall, Adam Seas, Mary Carbonneau, Michael Miranda, Jeremy Beish¸ Jeffrey Chisar, and Scott Hyde, | Civil Action No.: 6:13-cv-00961 |
| Plaintiffs, | |
| v. | |
| National Credit Adjusters, LLC, | **COMPLAINT** JURY |
| Defendant. | |

For this Complaint, Plaintiffs, by undersigned counsel, state as follows:

**JURISDICTION**

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), in its illegal efforts to collect a consumer debt.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

**PARTIES**

3. Plaintiff, Barbara Hall (hereafter "Hall"), is an adult individual residing in Longview, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

4. Plaintiff, Adam Seas (hereafter "Seas"), is an adult individual residing in Piqua, Ohio, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

5. Plaintiff, Mary Carbonneau (hereafter "Carbonneau"), is an adult individual residing in Burbank, California, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

6. Plaintiff, Michael Miranda (hereafter "Miranda"), is an adult individual residing in San Tan Valley, Arizona, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

7. Plaintiff, Jeremy Beish (hereafter "Beish"), is an adult individual whose residence is in Newark, Ohio, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and is a "person" as defined by 47 U.S.C. § 153(10).

8. Plaintiff, Jeffrey Chisar (hereafter "Chisar"), is an adult individual residing in Belmont, New Hampshire, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

9. Plaintiff, Scott Hyde (hereafter "Hyde"), is an adult individual residing in Lakewood, California, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

10. Defendant, National Credit Adjusters, LLC (hereafter "NCA"), is a Kansas business entity with an address of 327 West 4th Street, Hutchinson, Kansas 67504, operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

## ALLEGATIONS APPLICABLE TO BARBARA HALL

11. Hall allegedly incurred a financial obligation ("Hall's Debt") to Hydra Financial (the "Creditor").

12. Hall's Debt arose from services provided by Hydra Financial which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

13. Hall's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by Hydra Financial to collect Hall's Debt.

14. NCA attempted to collect Hall's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

15. On or about June 12, 2013, NCA left a voicemail message on Hall's telephone. The message stated that NCA would serve Hall with court documents at her home or place of employment the following day between 1:00 p.m. and 5:00 p.m.

16. Fearing the imminent lawsuit, Hall agreed to a payment plan with NCA.

17. On or about June 19, 2013, Hall requested that NCA provide her with validation before she made her first payment.

18. In response, "Mark" told Hall to "forget the pay plan" and that NCA would "move forward with the court."

19. However, to date no such legal action has been taken.

20. In addition, NCA failed to identify the name of its company and failed to state that the reason for its calls was debt collection.

**ALLEGATIONS APPLICABLE TO ADAM SEAS**

21. Seas allegedly incurred a financial obligation ("Seas's Debt") to Cashnet (the "Creditor").

22. Seas's Debt arose from services provided by Cashnet which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

23. Seas's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by Cashnet to collect Seas's Debt.

24. NCA attempted to collect Seas's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

25. In or around June 2013, NCA began placing daily calls to Seas's cellular telephone and place of employment in an attempt to collect Seas's Debt.

26. NCA told Seas that it was sending a process server to his residence to serve him with a summons to appear in court. NCA also called Seas a criminal and accused Seas of writing bad checks.

27. When Seas spoke with a different representative later that same day, the representative told Seas it was not actually going to bring Seas to court and that the previous call was just a "tactic" NCA used.

28. During this conversation, Seas informed NCA that he had previously paid his debt in full with another collection agency. NCA promised to cease collection calls to Seas.

29. Nonetheless, NCA continued to place collection calls to Seas.

30. During a later conversation, NCA repeated its previous accusation that Seas was a criminal and told Seas that it would send a police officer to remove him from his house. NCA also threatened to tell Seas's father that he was a criminal.

31. Moreover, NCA called Seas a "worthless piece of shit".

**ALLEGATIONS APPLICABLE TO MARY CARBONNEAU**

32. Carbonneau allegedly incurred a financial obligation in the approximate amount of $ 1,409.00 ("Carbonneau's Debt") to Great Plains Lending (the "Creditor").

33. Carbonneau's Debt arose from services provided by Great Plains Lending which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

34. Carbonneau's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by Great Plains Lending to collect Carbonneau's Debt.

35. NCA attempted to collect Carbonneau's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

36. Within the last year, NCA called Carbonneau's place of employment and demanded to speak with her employer.

37. Carbonneau informed NCA that the calls to her workplace were inconvenient and disruptive and directed NCA to cease calling her at that number. Carbonneau then provided NCA with her cellular telephone number for future communications.

38. Nonetheless, NCA continued calling Carbonneau at her place of employment.

39. Moreover, NCA called Carbonneau's friend and disclosed details regarding Carbonneau's Debt..

**ALLEGATIONS APPLICABLE TO MICHAEL MIRANDA**

40. Miranda's cousin (the "Debtor") allegedly incurred a financial obligation ("Miranda's Alleged Debt") to an original creditor (the "Creditor").

41. Miranda's Alleged Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

42. Miranda's Alleged Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by the Creditor to collect Miranda's Alleged Debt.

43. NCA attempted to collect Miranda's Alleged Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

44. Within the last year, NCA called Miranda's cellular telephone.

45. During the initial conversation, "John Shuman" told Miranda that he was calling for the Debtor. Miranda informed Mr. Shuman that he was not the Debtor and that the Debtor could not be reached at his number. Miranda then requested that NCA cease calling him.

46. Nonetheless, NCA continued to call Miranda.

47. Miranda called NCA and told a representative that he would retain an attorney regarding the harassing calls. The representative responded by laughing and stating, "Yeah, okay, let me know how that goes for you."

## ALLEGATIONS APPLICABLE TO JEREMY BEISH

48. Beish allegedly incurred a financial obligation in the approximate amount of $398.00 ("Beish's Debt") to Cashnet (the "Creditor").

49. Beish's Debt arose from services provided by Cashnet which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

50. Beish's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by Cashnet to collect Beish's Debt.

51. NCA attempted to collect Beish's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

52. Within the last year, NCA placed calls to Beish's cellular telephone using an automatic telephone dialing system ("ATDS").

53. When answering NCA's telephone calls, Beish was often met with a period of silence before being connected to a live representative with whom he could speak.

54. NCA called Beish at an excessive rate, placing approximately two calls per day to Beish's cellular telephone.

55. Beish informed NCA that he was unemployed and could not afford to pay his Debt, and therefore directed NCA to cease all calls regarding Beish's Debt.

56. Nonetheless, NCA continued to place automated calls to Beish's cellular telephone in an attempt to collect Beish's Debt.

57. In addition, NCA told Beish to "stop hiding behind [his] wife and to "get off [his] butt and get a job."

58. Moreover, NCA told Beish that he would go to jail if his debt was not paid.

**ALLEGATIONS APPLICABLE TO JEFFREY CHISAR**

59. Chisar allegedly incurred a financial obligation in the approximate amount of $400.00 ("Chisar's Debt") to an original creditor (the "Creditor").

60. Chisar's Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

61. Chisar's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by the Creditor to collect Chisar's Debt.

62. NCA attempted to collect Chisar's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

63. On or about June 18, 2013, NCA called Chisar on his cellular phone in an attempt to collect Chisar's Debt.

64. During this conversation, "Taylor Williams" failed to inform Chisar of the name of her company and failed to state that the reason for the call was debt collection.

65. Rather, Ms. Williams identified herself as a "locator" and told Chisar that she and the local police would be at Chisar's place of employment with a warrant for his arrest in thirty (30) minutes.

66. Ms. Williams continued that she would talk to the CEO of Chisar's company to determine the "proper protocol" to have Chisar "handcuffed, arrested and removed from the property."

67. In addition, Ms. Williams told Chisar that he was facing three felony charges: "breaking of a contract," "closing of an account," and "writing a bad check," and that he was facing up to three years in prison for fraud.

68. Ms. Williams also provided Chisar with a "docket number" to use as a reference in future communications. The "docket number" referenced by Ms. Williams was actually an internal account number used by NCA.

69. Ms. Williams then told Chisar that if he paid $1,900.00 via credit card immediately, she would have the Belknap County Defense Attorney drop the charges.

70. Fearing arrest, Chisar provided his credit card number to NCA.

71. Chisar was then transferred to another representative "Jay Williams". Mr. Williams told Chisar that there was not actually a warrant out for his arrest and that the charges had been "suspended" during the conversation. Mr. Williams told Chisar that NCA would now only "file papers" against him.

72. However, no such "papers" were filed against Chisar.

**ALLEGATIONS APPLICABLE TO SCOTT HYDE**

73. Hyde allegedly incurred a financial obligation ("Hyde's Debt") to an original creditor (the "Creditor") for a payday loan.

74. Hyde's Debt arose from services provided by the Creditor which were primarily for family, personal or household purposes, which meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

75. Hyde's Debt was purchased, assigned or transferred to NCA for collection, or NCA was employed by the Creditor to collect Hyde' Debt.

76. NCA attempted to collect Hyde's Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

77. Within the last year, NCA contacted Hyde in an attempt to collect Hyde's Debt.

78. During each and every conversation, Hyde disputed ownership and the validity of the debt being collected.

79. Each time, NCA insisted that Hyde's Debt was valid and that Hyde needed to pay it immediately.

80. In addition, NCA called Hyde at his place of employment. Hyde informed NCA that calls to his workplace were inconvenient and instructed NCA to cease the calls.

81. Nonetheless, NCA continued calling Hyde at his place of employment.

**COUNT I**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF BARBARA HALL**

82. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

83. Defendant's conduct violated 15 U.S.C. § 1692d in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Hall in connection with the collection of a debt.

84. Defendant's conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused a phone to ring repeatedly and engaged Hall in telephone conversations, with the intent to annoy and harass.

85. Defendant's conduct violated 15 U.S.C. § 1692d(6) in that Defendant placed calls to Hall without disclosing the identity of the debt collection agency.

86. Defendant's conduct violated 15 U.S.C. § 1692e in that Defendant used false, deceptive and/or misleading representations or means in connection with collection of Hall's Debt.

87. Defendant's conduct violated 15 U.S.C. § 1692e(5) in that Defendant threatened to take legal action against Hall, without actually intending to do so.

88. Defendant's conduct violated 15 U.S.C. § 1692e(11) in that Defendant failed to inform Hall that communications were an attempt to collect a debt.

89. Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect Hall's Debt.

90. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

91. Hall is entitled to damages as a result of Defendant's violations.

**COUNT II**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF ADAM SEAS**

92. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

93. Defendant's conduct violated 15 U.S.C. § 1692d in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Seas in connection with the collection of a debt.

94. Defendant's conduct violated 15 U.S.C. § 1692d(2) in that Defendant used profane and abusive language when speaking with the consumer.

95. Defendant's conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused a phone to ring repeatedly and engaged Seas in telephone conversations with the intent to annoy and harass Seas.

96. Defendant's conduct violated 15 U.S.C. § 1692e in that Defendant used false, deceptive and/or misleading representations or means in connection with collection of Seas's Debt.

97. Defendant's conduct violated 15 U.S.C. § 1692e(2) in that Defendant misrepresented the character, amount and legal status of Seas's Debt.

98. Defendant's conduct violated 15 U.S.C. § 1692e(4) in that Defendant threatened Seas with imprisonment if Seas's Debt was not paid.

99. Defendant's conduct violated 15 U.S.C. § 1692e(5) in that Defendant threatened to take legal action, without actually intending to do so.

100. Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect a debt.

101. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

102. Seas is entitled to damages as a result of Defendant's violations.

**COUNT III**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF MARY CARBONNEAU**

103. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

104. Defendant contacted Carbonneau at her place of employment, knowing that the Carbonneau's employer prohibited such communications, in violation of 15 U.S.C. § 1692c(a)(3).

105. Defendant communicated with individuals other than Carbonneau, Carbonneau's attorney, or a credit bureau, in violation of 15 U.S.C. § 1692c(b).

106. Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Carbonneau in connection with collection of Carbonneau's Debt, in violation of 15 U.S.C. § 1692d.

107. Defendant used false, deceptive and/or misleading representations or means in connection with collection of Carbonneau's Debt, in violation of 15 U.S.C. § 1692e.

108. Defendant used unfair and unconscionable means to collect Carbonneau's Debt, in violation of 15 U.S.C. § 1692f.

109. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

110. Carbonneau is entitled to damages as a result of Defendant's violations.

**COUNT IV**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF MICHAEL MIRANDA**

111. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

112. Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Miranda in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

113. Defendant caused a phone to ring repeatedly and engaged Miranda in telephone conversations, with the intent to annoy and harass, in violation of 15 U.S.C. § 1692d(5).

114. Defendant used unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

115. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

116. Miranda is entitled to damages as a result of Defendant's violations.

**COUNT V**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF JEREMY BEISH**

117. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

118. Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Beish in connection with collection of Beish's Debt, in violation of 15 U.S.C. § 1692d.

119. Defendant caused a phone to ring repeatedly and engaged Beish in telephone conversations with the intent to annoy and harass Beish, in violation of 15 U.S.C. § 1692d(5).

120. Defendant used false, deceptive, or misleading representation or means in connection with the collection of a debt, in violation of 15 U.S.C. § 1692e.

121. Defendant threatened Beish with imprisonment if Beish's Debt was not paid, in violation of 15 U.S.C. § 1692e(4).

122. Defendant employed false and deceptive means to collect a debt, in violation of 15 U.S.C. § 1692e(10).

123. Defendant used unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

124. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

125. Beish is entitled to damages as a result of Defendant's violations.

**COUNT VI**
**VIOLATIONS OF THE TCPA 47 U.S.C. § 227, *et seq.***
**AS TO PLAINTIFF JEREMY BEISH**

126. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

127. Without express consent, Defendant contacted Beish by means of automated telephone calls on his cellular telephone in violation of 47 U.S.C. § 227(b)(1)(A)(iii). As such, each call placed to Beish is a knowing and/or willful violation of the TCPA, and is therefore subject to treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(C).

128. In the alternative, as a result of each negligent call made in violation of the TCPA, Beish is entitled to an award of $500.00 for each call pursuant to 47 U.S.C. § 227(b)(3)(B).

**COUNT VII**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF JEFFREY CHISAR**

129. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

130. Defendant's conduct violated 15 U.S.C. § 1692d in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Chisar in connection with the collection of a debt.

131. Defendant's conduct violated 15 U.S.C. § 1692d(6) in that Defendant placed calls to Chisar without disclosing the identity of the debt collection agency.

132. Defendant's conduct violated 15 U.S.C. § 1692e in that Defendant used false, deceptive, or misleading representation or means in connection with the collection of a debt.

133. Defendant's conduct violated 15 U.S.C. § 1692e(4) in that Defendant threatened Chisar with imprisonment if Chisar's was not paid.

134. Defendant's conduct violated 15 U.S.C. § 1692e(5) in that Defendant threatened to take legal action against Chisar, without actually intending to do so.

135. Defendant's conduct violated 15 U.S.C. § 1692e(11) in that Defendant failed to inform Chisar that communications were an attempt to collect a debt.

136. Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect Chisar's Debt.

137. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

138. Chisar is entitled to damages as a result of Defendant's violations.

**COUNT VIII**
**VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, *et seq.***
**AS TO PLAINTIFF SCOTT HYDE**

139. Plaintiffs repeat and reallege the above referenced paragraphs of this Complaint and incorporate them herein by reference.

140. Defendant contacted Hyde at his place of employment, knowing that Hyde's employer prohibited such communications, in violation of 15 U.S.C. § 1692c(a)(3).

141. Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Hyde in connection with the collection of a debt, in violation of 15 U.S.C. § 1692d.

142. Defendant used unfair and unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f.

143. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA.

144. Hyde is entitled to damages as a result of Defendant's violations.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant:

1. Actual damages to each Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1);
2. Statutory damages of $1,000.00 to each Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A);

3. Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);
4. Statutory damages to Beish pursuant to 47 U.S.C. § 227(b)(3)(B) & (C);
5. Punitive damages; and
6. Such other and further relief as may be just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: December 17, 2013

Respectfully submitted,

By *<u>/s/ Jody B. Burton</u>*

Jody B. Burton, Esq.
Bar No.: 71681
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
E-mail: jburton@lemberglaw.com
*Attorneys for Plaintiffs*